UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JESSE ROSENBLATT, an individual,

                                     Plaintiff,

              vs.

SYED DOHA, an individual, HEINER FRIEDRICH,
an individual, MELOTHE, INC., a Florida
corporation, OFLO VIDEO, INC., a Florida
corporation, PIXELLUTION, INC., a Florida
corporation, OFLO, INC., a Delaware corporation,
MIENT, INC., a New York corporation, LISA
SHERIDAN-DOHA, an individual, CARITAS
DOHA, an individual, and DOES 1-10,

                                 Defendants.

CASE NO. 12-CV-1991(AT)

ECF Case

**DEFENDANTS' REPLY BRIEF IN
FURTHER SUPPORT OF PARTIAL
SUMMARY JUDGMENT MOTION**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ...............................................................................1

REPLY STATEMENT OF FACTS.........................................................................3

LEGAL ARGUMENT ...........................................................................................5

I.   PLAINTIFF HAS NOT MET HIS BURDEN UNDER RULE 56 IN TRYING TO AVOID SUMMARY JUDGMENT ON THE CLAIMS AS TO WHICH DEFENDANTS HAVE MOVED.........................................................................5

II.  PLAINTIFF HAS FAILED TO OPPOSE, AND THUS HAS CONCEDED, NUMEROUS GROUNDS FOR SUMMARY JUDGMENT AS TO VARIOUS CLAIMS .............................................................................................................5

III. THE COMPLAINT'S RACIAL DISCRIMINATION CLAIMS CANNOT SURVIVE SUMMARY JUDGMENT (FIRST, SECOND AND THIRD CLAIMS) ...........................................................................................................8

IV.  PLAINTIFF'S UNLAWFUL WITHHOLDING OF WAGES CLAIM UNDER THE NEW YORK LABOR LAW CANNOT WITHSTAND SUMMARY JUDGMENT (FOURTH CLAIM) .....................................................................11

A.   Summary judgment as to plaintiff's unpaid wages claim is supported by the extensive authority cited by defendants and by the case on which plaintiff primarily relies, Pachter, which explained that "employees serving in an executive, managerial or administrative capacity do not fall under section 191 of the Labor Law" and that "executives are employees for purposes of Labor Law 6, except where expressly excluded," as in §191.....................................................................................................................11

B.   The only other case on which plaintiff relies, Miteva, likewise provides that executives and professionals such as plaintiff are excluded from §191 .........14

C.   Lauria fully applies here ...............................................................................16

D.   Plaintiff's Labor Law claim is an impermissible moving target............................18

V.   PLAINTIFF CANNOT WITHSTAND SUMMARY JUDGMENT ON HIS UNLAWFUL RETALIATION CLAIM (SIXTH CLAIM) ...............................................20

VI.  PLAINTIFF'S BREACH OF FIDUCIARY DUTY AND ACCOUNTING CLAIMS CANNOT SURVIVE SUMMARY JUDGMENT BECAUSE PLAINTIFF DID NOT ENTER INTO ANY PARTNERSHIP WITH MR. DOHA AND MR. FRIEDRICH (NINTH AND ELEVENTH CLAIMS)....................................21

A.   As a matter of law, no partnership existed among plaintiff, Mr. Doha and Mr. Friedrich ........................................................................................21

B.   As a matter of law, no joint venture existed ...........................................22

C.   Plaintiff's unpled minority shareholder "claim" cannot withstand summary judgment .........................................................................................25

VII.   PLAINTIFF'S UNJUST ENRICHMENT CLAIM MUST FAIL (FOURTEENTH CLAIM) ...........................................................................................28

CONCLUSION....................................................................................29

# TABLE OF AUTHORITIES

Page(s)

CASES

Alpert v. 28 Williams St. Corp.,
    63 N.Y.2d 557 (1984) ...............................................................................................27

Beckman v. U.S. Postal Serv.,
    79 F. Supp.2d 394 (S.D.N.Y. 2000)................................................................22, 25

Bettan v. Geico Gen. Ins. Co.,
    296 A.D.2d 469, 745 N.Y.S.2d 545 (2nd Dept. 2001)........................................28

Bonnie & Co. Fashions, Inc. v. Bankers Trust Co.,
    170 F.R.D. 111 (S.D.N.Y. 1997) ...................................................................22, 25

Celotex Corp. v. Catrett,
    477 U.S. 317 (1986)...........................................................................................5, 26

Centro Empresarial Cempresa S.A. v. Am. Movil, S.A.B. de C.V.,
    17 N.Y.3d 269 (2011) ...........................................................................................27

Coxfam, Inc. v. AAMCO Transmissions,
    1990 WL 131064 (E.D. Pa. Sept. 6, 1990) ............................................................6

Cresswell v. Sullivan & Cromwell,
    922 F.2d 60 (2nd Cir. 1990)..................................................................................26

Crosland v. City of New York,
    140 F. Supp. 2d 300 (S.D.N.Y. 2001), aff'd sub nom., Crosland v. Safir, 54 F. App'x
    504 (2d Cir. 2002)..................................................................................................20

Davella v. Nielsen,
    208 A.D.2d 494 (2nd Dept. 1994) ..................................................................23, 24

De Vito v. Pokoik,
    150 A.D.2d 331 (2nd Sept. 1989) .........................................................................24

Eden v. St. Luke's-Roosevelt Hosp. Ctr.,
    Index No. 114936/05 (N.Y. Sup. Ct. Oct. 19, 2010), aff'd as modified, 947 N.Y.S.2d
    457 (1st Dept. 2012) ..............................................................................................12

Ennis v. Sonitrol Mgmt. Corp.,
    2006 WL 177173 (S.D.N.Y. Jan. 25, 2006) ........................................................10

Fin. Techs. Int'l, Inc. v. Smith,
    247 F. Supp.2d 397 (S.D.N.Y. 2002) ........................................................19

Geller v. North Shore Long Island Jewish Health Sys.,
    2013 WL 5348313 (E.D.N.Y. Sept. 23, 2013) .............................................6

Gottlieb v. Kenneth D. Laub & Co.,
    82 N.Y.2d 457 (1993) ...............................................................................19

Kaplan v. BST Advisory Network, LLC,
    2009 WL 5225215 (N.Y. Sup. Ct. 2009) ...................................................12

Kidz Cloz, Inc. v. Officially For Kids, Inc.,
    320 F. Supp.2d 164 (S.D.N.Y. 2004) ...................................................23, 24

Lauria v. Heffernan,
    607 F. Supp.2d 403 (E.D.N.Y. 2009) ...........................................12, 16, 17

Littman v. Magee,
    54 A.D.3d 14 (1st Dept. 2008),
    abrogated by, Centro Empresarial Cempresa S.A. v. Am. Movil, S.A.B. de C.V.,
    17 N.Y.3d 269 (2011) ...............................................................................27

Malinowski v. Wall St. Source, Inc.,
    2012 WL 279450 (S.D.N.Y. Jan. 31, 2012) ...................................13, 14, 19

Martin v. National R.R. Passenger Corp.,
    2012 WL 1129360 (S.D.N.Y. Mar. 30, 2012) ..............................................5

Meiri v. Dacon,
    759 F.2d 989 (2nd Cir. 1985) ....................................................................10

Miteva v. Third Point Management Co., LLC,
    323 F. Supp.2d 573 (S.D.N.Y. 2004),
    abrogation on other grounds recognized by,
    Friedman v. Coldwater Creek, Inc., 551, F. Supp.2d 164, (S.D.N.Y. 2008) ....................14, 15

Monagle v. Scholastic, Inc.,
    2007 WL 766282 (S.D.N.Y. Mar. 9, 2007) .........................................17, 18

Moras v. Marco Polo Network, Inc.,
    2012 WL 6700231 (S.D.N.Y. Dec. 20, 2012) .....................................13, 29

Northern Shipping Funds I, LLC v. Icon Capital Corp.,
    921 F. Supp.2d 94 (S.D.N.Y. 2013) ..........................................................24

Oneida Indian Nation of New York v. County of Oneida,
    617 F.3d 114 (2nd Cir. 2010) ....................................................................22

Pachter v. Bernard Hodes Group, Inc.,
    10 N.Y.3d 609 (2008), 541 F.3d 461 (2nd Cir. 2008) ...................................................11, 12, 19

Pilgrim v. McGraw-Hill Cos., Inc.,
    599 F. Supp.2d 462 (S.D.N.Y. 2009).........................................................................................6

Quintanilla v. Suffolk Paving Corp.,
    2011 WL 1323033 (E.D.N.Y. Feb. 10, 2011),
    report and recommendation adopted,
    2011 WL 1253248 (E.D.N.Y. Mar. 28, 2011) ........................................................................20

Schnabel v. Abramson,
    232 F.3d 83 (2nd Cir. 2000) (citation omitted) ..........................................................................8

Stein v. Sapir Realty Management Corp.,
    2010 WL 2797910 (N.Y. Sup. Ct. 2010) .............................................................................12, 19

Weg v. Macchiarola,
    995 F.2d 15 (2nd Cir. 1993).......................................................................................................5

## STATUTES

New York Lab, Law §190, 191, 193, 198, 215 ............................................................... passim

New York Partnership Law §42 ...............................................................................................25

New York Partnership Law §44 ...............................................................................................28

New York Partnership Law, §121-201(a), 121-1500(a)(I) .......................................................21

## RULES

Fed. R. Civ. P. 12(b)(6).............................................................................................................17

Fed. R. Civ. P. 15.............................................................................................................21, 22, 25

Fed. R. Civ. P. 56(e) .............................................................................................................5, 26

## PRELIMINARY STATEMENT

Defendants Syed Doha, et al. respectfully submit this reply brief in further support of their motion for partial summary judgment as to the complaint's racial discrimination, unlawful withholding of wages, unlawful retaliation, breach of fiduciary duty, accounting, fraudulent transfer, unjust enrichment and California statutory claims. Further, plaintiff's purported requests for mental suffering, anxiety, humiliation and emotional distress damages and for punitive damages for alleged racial discrimination are not cognizable under the New York Labor Law and the New York Human Rights Law, respectively.

Plaintiff has failed to oppose, and thus has conceded, numerous grounds for summary judgment. Such bases include that the stray remark doctrine calls for the Court to grant summary judgment dismissing plaintiff's racial discrimination claims; plaintiff's claims under California law cannot withstand summary judgment, as New York law governed plaintiff's employment relationship pursuant to the employment agreement's New York "governing law" clause and applicable legal authority; plaintiff's alleged request for mental suffering, anxiety, humiliation and emotional distress damages pursuant to the New York Labor Law cannot withstand summary judgment; plaintiff's request for punitive damages for alleged racial discrimination under New York law is not viable; and summary judgment is appropriate as to plaintiff's fraudulent transfer claim.

Further, defendants have established facts sufficient for the Court to grant summary judgment as to the aforementioned claims. The burden has then shifted to plaintiff to go beyond the pleadings and submit, through affidavit or by depositions, answers to interrogatories or admissions on file, specific facts showing that there is a genuine issue for trial. That he has thoroughly failed to do.

Plaintiff's racial discrimination claims are unsupported, both factually and legally.  He has failed to meet his burden of demonstrating a prima facie case of anti-Semitic discrimination and in rebutting defendants' legitimate, non-discriminatory reasons for his employment's termination by establishing that such reason for termination was false _and_ that discrimination constituted the real reason.  It is undisputed that when Mr. Doha ended the subject Mient project, he terminated the employment of all then-existing employees, both Jewish and non-Jewish, and that he did not replace any of those employees, including plaintiff, with anyone.  Plaintiff has not presented any facts of record demonstrating that the circumstances of his termination comprised anything other than a business decision to cease a failed project, which had not generated any revenue (or profit).

Like his racial discrimination claims, plaintiff's other foregoing claims cannot survive summary judgment.  The New York Labor Law's own terms and the governing case law provide that, as an executive and a professional, plaintiff is excluded from maintaining an unlawful withholding of wages claim.  His unlawful retaliation claim must fail because he has not adduced evidence of a nexus between Mr. Doha's decision to terminate plaintiff's employment and any alleged "complaint" to Mr. Doha by plaintiff about unpaid wages.  His breach of fiduciary duty and accounting claims cannot avoid summary judgment because, as a matter of law, Mr. Doha, Mr. Friedrich and plaintiff did not enter into any partnership, be it a limited partnership, a limited liability partnership or a general partnership.  Moreover, the Court should not consider his new, unpled joint venture and minority shareholder "claims."  Even if it does so, however, such claims should be dismissed because Mr. Doha, Mr. Friedrich and plaintiff did not enter into a joint venture as a matter of law, and plaintiff has not adduced any evidence of any breach of fiduciary

duty by Mr. Doha or Mr. Friedrich.   Finally, he has failed to support with any cognizable evidence his duplicative unjust enrichment claim.

The Court should grant summary judgment dismissing the foregoing claims for the reasons set forth herein and in defendants' moving brief.

## REPLY STATEMENT OF FACTS[1]

Plaintiff's reference in his declaration that he "identified and created several potential business opportunities" and "lined up potential partnership deals with media companies like Broadway Video (with respect to Saturday Night Live) and the National Football League, and arranged in-person meetings for Doha and Friedrich with movie studios, television networks, and movie and television production companies in Los Angeles" vastly overstates any alleged "contribution" to the Mient project by plaintiff.   The one meeting that he apparently had arranged with a studio executive did not take place because the individual did not show up.   Plaintiff had nothing to do with arranging the meetings that Mr. Doha did attend with media company executives and others in connection with the Mient project.   For instance, Mr. Doha met on multiple occasions in January and March 2011 in Los Angeles with a Fox Studios executive, Peter Levinson, about the project, and he sent information about the Mient player to Fox Studios for lab testing.   The information that he provided was favorably received by Fox Studios. Plaintiff had nothing to do with arranging the Fox Studio meetings.   It is incorrect that Mr. Doha "refused to provide…basic information" about the player technology to any interested media companies.   (Doha Reply Decl., ¶2)

---

[1] The facts herein are taken from the October 1, 2013 Declaration of Syed Doha ("Doha Decl.," DE 79), October 1, 2013 Declaration of Edwin F. Chociey, Jr. ("Chociey Decl.," DE 80), October 15, 2013 Reply Declaration of Syed Doha ("Doha Reply Decl.") and October 15, 2013 Reply Declaration of Edwin F. Chociey, Jr. ("Chociey Reply Decl."), and the exhibits attached thereto, unless otherwise indicated.

Nor did plaintiff have anything to do with arranging other meetings that Mr. Doha attended in Los Angeles in furtherance of the Mient project, including ones with Sid Ganis, a LucasFilm executive and a former president of the Academy of Motion Picture Arts and Sciences, and Jeff Berg, an executive at the ICM talent search firm. Plaintiff was unable to arrange meetings with executives with substantial decision-making authority about potential content deals for the Mient project. (Doha Reply Decl., ¶3)

On his visits to Los Angeles in January and March 2011 in furtherance of the project, Mr. Doha discussed plaintiff's unacceptable work performance with plaintiff. (Doha Reply Decl., ¶4; DE 79, at ¶9; DE 80, at 6-11, Doha dep. tr., 111:18-115:9, 118:3-120:8, 123:15-131:20) Thus, it is incorrect that Mr. Doha never notified plaintiff about his unacceptable work performance.[2] (DE 85, at 3)

Mr. Doha did not refer to Jewish people as "kikes." It should be noted that, in his declaration, plaintiff did not provide any specific information, such a date, a time, a place, others who were present, etc., as to even one alleged instance in which Mr. Doha purportedly used the word. Nor, from all of the tens of thousands of pages of documents that plaintiff has provided in

---

[2] The documentary "substantiation" offered by plaintiff of his statement that Mr. Doha "repeatedly expressed his pleasure with the quality of Rosenblatt's performance" consisted of two items: (1) one e-mail in November 2010 stating "[t]his is very helpful" in response to an e-mail by plaintiff concerning the project's potential retention of "Barry G." on a monthly retainer (DE 88-10, at 2-3); and (2) Mr. Doha stating in a September 2010 e-mail that plaintiff had "done [a] fantastic job" after he had "take[n] a quick look" at plaintiff's employment and consulting agreements that plaintiff had prepared. (DE 88-15, at 2) Out of the 32,005 documents and 78,038 pages that plaintiff has provided in this lawsuit, that is the entirety of plaintiff's "evidence" purportedly constituting Mr. Doha's alleged "repeated expression of his pleasure with the quality of Rosenblatt's performance." (DE 80, at ¶6)

It should be noted that defendants have requested that the Court not permit plaintiff to use various documents that he failed to produce during the discovery period on motions in this lawsuit. (DE 70) Such documents include exhibits to plaintiff's opposition declaration such as A, C, D, E, F, G, H, I, J and L. (DE 88)

this lawsuit has plaintiff recorded or substantiated Mr. Doha's alleged use of the word.  In fact, before this lawsuit, Mr. Doha was not familiar with the word.  He was born and raised in Bangladesh.  The word is not part of the lexicon of English speakers in Bangladesh, and he does not recall ever hearing it uttered by anyone either in Bangladesh or after he came to the United States in 1993.  Also, he did not scream at plaintiff in July 2011 as stated in plaintiff's declaration.  (Doha Reply Decl., ¶7)

## LEGAL ARGUMENT

**I.  PLAINTIFF HAS NOT MET HIS BURDEN UNDER RULE 56 IN TRYING TO AVOID SUMMARY JUDGMENT ON THE CLAIMS AS TO WHICH DEFENDANTS HAVE MOVED**

As set forth in their moving papers, defendants have established <u>facts</u> sufficient for the Court to award judgment as a matter of law.  Thus, the burden of proof shifts to plaintiff, who must go beyond the pleadings and submit through affidavit or by depositions, answers to interrogatories or admissions on file "specific facts showing that there is a genuine issue for trial." <u>Fed. R. Civ. P.</u> 56(e); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 324 (1986).  As the burden has been shifted to plaintiff, defendants are entitled to a judgment as a matter of law on the subject claims for the reasons set forth in defendants' moving brief and herein.  <u>See Weg v. Macchiarola</u>, 995 F.2d 15, 18 (2nd Cir. 1993) ("If the movant satisfies the burden of establishing that there is no genuine issue of material fact, then the burden shifts to the nonmovant to proffer evidence demonstrating that a trial is required because a disputed issue of material fact exists").

**II.  PLAINTIFF HAS FAILED TO OPPOSE, AND THUS HAS CONCEDED, NUMEROUS GROUNDS FOR SUMMARY JUDGMENT AS TO VARIOUS CLAIMS**

Plaintiff has failed to oppose several legal arguments advanced by defendants in their moving papers, conceding that summary judgment is appropriate on such grounds.  <u>See</u> Martin v.

National R.R. Passenger Corp., 2012 WL 1129360 (S.D.N.Y. Mar. 30, 2012) (explaining that plaintiff "did not resist this argument in her opposition to summary judgment, and therefore concedes it"); Geller v. North Shore Long Island Jewish Health Sys., 2013 WL 5348313, *13 (E.D.N.Y. Sept. 23, 2013) ("[Plaintiff] does not even attempt to make any arguments on her behalf with regard to this claim in her opposition to the motion for summary judgment and consequently appears to concede these points."); Coxfam, Inc. v. AAMCO Transmissions, 1990 WL 131064, *9 n.6 (E.D. Pa. Sept. 6, 1990) ("Plaintiffs apparently concede that they cannot pursue these claims as their response in opposition to the defendants' motion for summary judgment does not address defendants' arguments with respect to these claims and does not assert that plaintiffs will pursue these theories of recovery.  Therefore, I will enter judgment on these claims in favor of defendants.").

Thus, in Pilgrim v. McGraw-Hill Cos., Inc., 599 F. Supp.2d 462 (S.D.N.Y. 2009), a plaintiff brought a claim against her employer alleging that her employer had failed to promote her in retaliation for her complaints about race discrimination.  Id. at 466.  The defendant employer argued that the plaintiff had not provided any evidence that she actually had applied for the positions and that the plaintiff had conceded that she had not applied for these positions by not answering the defendant's contentions in her summary judgment opposition.  Id. at 474. The court found that "since plaintiff has not offered any evidence that she specifically applied for the…positions, and she has not offered any evidence to demonstrate that the specific application requirement should be excused….She has failed to establish one element of her prima facie case for failure to promote based on race."  Id. at 475.  The court explained that the plaintiff "effectively concedes as much by not addressing defendant's argument in her opposition to summary judgment. Her failure to offer proof…is fatal to her claim." Id. at 474.

Defendants' unopposed bases for summary judgment include the following:

1.    The stray remark doctrine calls for the Court to grant summary judgment dismissing plaintiff's racial discrimination claims (First, Second and Third Claims).  (DE 82, at 12-18)

2.    Plaintiff's claims under California law cannot withstand summary judgment, as New York law governed plaintiff's employment relationship pursuant to the employment agreement's New York "governing law" clause and applicable legal authority (Third, Fifth, Tenth and Thirteenth Claims).  (DE 82, at 19-26)

3.    Plaintiff's alleged request for mental suffering, anxiety, humiliation and emotional distress damages pursuant to the New York Labor Law cannot withstand summary judgment.  (DE 82, at 35-37)

4.    Plaintiff's request for punitive damages for alleged racial discrimination under New York law is not viable (Second Claim).[3]  (DE 82, at 37)

5.    Summary judgment is appropriate as to plaintiff's fraudulent transfer claim (Twelfth Claim).  (DE 82, at 46-47)

Plaintiff's failure to dispute any of these grounds for summary judgment underlines the appropriateness of granting defendants' summary judgment motion as to such claims.

_____

[3] In his opposition brief, plaintiff has backpedaled from his request for punitive damages based on his racial discrimination claim under the New York State Human Rights Law contained in his proposed jury instructions, wherein he stated that "[i]f you find that Defendants discriminated against Plaintiff Rosenblatt on the basis of his race, or retaliated against him for opposing, objecting to, and/or complaining of race discrimination, then you may award him punitive damages if he proves that Defendants' unlawful conduct was the result of gross negligence, recklessness, or wantonness."  (DE 85, at 13; DE 54-1, at 79)  Now, plaintiff states that he "does not seek an award of punitive damages for violations of New York Executive Law §296."  (DE 85, at 13)  In any event, it is undisputed that plaintiff is not entitled to punitive damages on his Second Claim.  (DE 82, at 37)  Summary judgment is appropriate to make clear that plaintiff may not seek or recover punitive damages on his racial discrimination claim under New York law.

## III.   THE COMPLAINT'S RACIAL DISCRIMINATION CLAIMS CANNOT SURVIVE SUMMARY JUDGMENT (FIRST, SECOND AND THIRD CLAIMS)

Plaintiff has failed to meet his burdens in demonstrating a prima facie case of discrimination and in rebutting defendants' legitimate, non-discriminatory reasons for his employment's termination by establishing that such reason for termination was false and that discrimination was the real reason. (DE 82, at 7-12)  Plaintiff has not demonstrated a prima facie case of discrimination.  He has failed to respond to numerous crucial facts of record concerning his employment's termination, including that Mr. Doha, the person who fired plaintiff, was the same person who had hired him. (DE 79, at ¶6)  Consequently, it is difficult to impute to Mr. Doha an invidious motivation that would be inconsistent with the decision to hire.  See Schnabel v. Abramson, 232 F.3d 83, 91 (2nd Cir. 2000) (citation omitted).  (DE 82, at 9-10)

Plaintiff also failed to address the facts that Mr. Doha made the business decision to end the unsuccessful Mient project and terminate the employment of all remaining employees, Jewish and non-Jewish alike, in July 2011. (DE 79, at ¶6- 8)  He also failed to address the facts that Mr. Doha did not replace Mr. Rosenblatt with a non-Jewish employee and that he did not replace any employee with anyone. (DE 79, at ¶8)  Such undisputed facts of record belie a prima facie case of discrimination.

Plaintiff's attempt to establish a prima facie case of discrimination is fraught with unsupported statements.  Plaintiff makes the unsupported assertion that he was "qualified for his position." (DE 85, at 7)  Further, he states that Mr. Doha "provides no evidence that he notified Rosenblatt of his performance concerns," but such unsupported statement is incorrect. (DE 85, at 9; DE 79, at ¶9; Doha Reply Decl., ¶4)  Mr. Doha communicated to plaintiff his dissatisfaction with plaintiff's performance and plaintiff's failure to produce anything for the company on multiple occasions, including a March 2011 meeting and again in May 2011. (Doha dep. tr.,

123:18-21, 124:24-125:5)   During the March meeting, Mr. Doha specifically expressed dissatisfaction at plaintiff's failure to follow up on initiatives that the company had begun in January, when Mr. Doha and others had met with various high-ranking studio executives to show the company's player technology.  (Doha dep. tr., 125:16-22, 126:6-20)  Plaintiff had organized only one meeting, and that meeting did not actually occur, as the studio executive did not show up for the meeting.   (Doha dep. tr., 125:23-126:5)   Plaintiff was utterly failing to schedule meetings with studio executives in furtherance of establishing strategic partnerships to distribute their films through the company's player technology.  (Doha dep. tr., 129:15-130:12)  Plaintiff failed to use his alleged connections in the entertainment industry and his presence on the West Coast to follow up on meetings that the company had already conducted.  (Doha dep. tr., 131:3-20)  It is undisputed that he was unable to arrange a meeting with the Weinstein Company, despite having worked there, and failed and refused to approach Mr. Weinstein on the project's behalf when in close proximity to him at the Tribeca Grand Hotel lobby.  (Doha dep. tr., 111:22-112:1, 161:25-162:19)

Plaintiff also failed to rebut any of Mr. Doha's legitimate, non-discriminatory reasons for his employment's termination.  In his opposition, plaintiff does not address, at all, the undisputed fact that the Melothe project failed, and that the employment of all then-existing employees was terminated, whether such employees were Jewish or non-Jewish.  (DE 79, at ¶4, 6-8)  And Mr. Doha did not replace plaintiff with a non-Jewish employee, or anyone for that matter.[4]  (Id.)

---

[4] There was nothing "inconsistent" about Mr. Doha's testimony about the termination of plaintiff's employment.  Far from it.  He testified at deposition about matters such as plaintiff's almost consistent failure to deliver on assignments, his misrepresentations about his film industry connections, including at the Weinstein Company, his failure to furnish legal documents for the Mient project, his failure to keep Mr. Doha informed of the "work" that he was allegedly performing and the failure of project employees to fulfill their duties in connection with developing meaningful relationships with film studios.  (Doha dep. tr., 111:18-112:12, 112:16-

Plaintiff makes the unsupported statement in his opposition brief that "Doha's alleged association and relationship with Jewish people does not establish that he did not discriminate against Rosenblatt…" (DE 85, at 9)  Plaintiff provides no case law or any other legal authority for this statement, and in fact, it is plainly contradicted by precedent in this Court.  In <u>Ennis v. Sonitrol Mgmt. Corp.</u>, 2006 WL 177173 (S.D.N.Y. Jan. 25, 2006), the plaintiff claimed that he was subjected to a religious hostile work environment, and that he was thereafter terminated because of his religion (Judaism).  In granting defendants' summary judgment motion, the court observed:

> Defendants correctly point out that a number of other non-Jewish employees were terminated during approximately the same period as plaintiff. Furthermore, plaintiff's alleged status as defendants' sole Jewish employee does not create any inference of discrimination where, as here, defendants terminated a number of other non-Jewish employees during the same period.

<u>Id.</u> at *15.  <u>See</u> <u>Meiri v. Dacon</u>, 759 F.2d 989, 998 (2nd Cir. 1985) (granting summary judgment to defendant employer where plaintiff offered no evidence suggesting that defendant's "treatment of her differed from that accorded other non-Jewish employees; that the [defendant] departed from its general policies in discharging her; or that non-Jewish persons on probation who acted similarly were retained.").

Consequently, plaintiff has failed to rebut Mr. Doha's legitimate, non-discriminatory reasons for terminating his employment by demonstrating that such reasons were false and that discrimination was the real reason.  The record does not evidence any alleged anti-Semitic remark accompanying Mr. Doha's termination of plaintiff's employment.  Plaintiff's bald,

---

114:6)  For instance, on that last point, he explained at his deposition that "because of all the failures on their part, the company was not going anywhere and it only made sense to shut down…." (Doha dep. tr., 113:23-25) He reiterated such reasons in his declaration. (DE 79, at ¶4, 9)  Finally, out of the tens of thousands of documents that plaintiff has provided in this lawsuit, he was only able to present two e-mails, both in May 2011, comprising his alleged "frequent business updates" to Mr. Doha. (DE 85, at 9; DE 88-8, at 2; DE 88-9, at 2)

thoroughly unsubstantiated statement about "abuse" and use of the word "kike" by Mr. Doha is so vague and non-specific does not even come close to comprising "evidence" sufficient to withstand summary judgment. (DE 88, at ¶41; DE 82, at 14).   Nor does the record evince that anti-Semitism motivated Mr. Doha's decision to cease the unsuccessful project and terminate the employment of all then-existing employees, Jewish and non-Jewish.   Plaintiff happened to be one of those terminated remaining employees.   In light of Mr. Doha's undisputed history of having founded the Mient project with a Jewish person, Mr. Farinella, and having hired as many, if not more, Jewish employees than non-Jewish employees – as well as his background of speaking publicly and privately against anti-Semitism – there is absolutely no basis in the record for plaintiff to manufacture such a motivation on Mr. Doha's behalf.   (DE 79, at ¶6-8)   Plaintiff has not even come close to adducing evidence of record that Mr. Doha's reasons for termination of his employment were false and that Mr. Doha's real reason was anti-Semitic discrimination.

## IV. PLAINTIFF'S UNLAWFUL WITHHOLDING OF WAGES CLAIM UNDER THE NEW YORK LABOR LAW CANNOT WITHSTAND SUMMARY JUDGMENT (FOURTH CLAIM)

Plaintiff's effort to forestall summary judgment on his unlawful withholding of wages claim under the New York Labor Law is, to say the least, unavailing.   He disregards the Labor Law's plain language and the governing legal authority, and the cases that he cites in his opposition actually support summary judgment dismissing his claim.

> **A.    Summary judgment as to plaintiff's unpaid wages claim is supported by the extensive authority cited by defendants and by the case on which plaintiff primarily relies, Pachter, which explained that "employees serving in an executive, managerial or administrative capacity do not fall under section 191 of the Labor Law" and that "executives are employees for purposes of Labor Law 6, except where expressly excluded," as in §191**

Plaintiff's reliance on Pachter v. Bernard Hodes Group, Inc., 10 N.Y.3d 609 (2008), and 541 F.3d 461 (2nd Cir. 2008), is misplaced.   (DE 85, at 10-11)   In fact, as noted, the case supports

summary judgment against plaintiff, who indisputably was an executive (Vice President of Corporate Affairs) and a professional (attorney), on his unlawful withholding of wages claim.

As addressed in defendants' brief (DE 82, at 30), the Pachter plaintiff, a vice president for the defendant company providing recruitment, marketing and staffing services for other businesses, was compensated by commission, not salary; she sued under §193 for alleged unlawful deductions from wages, i.e., certain expenses deducted from her commissions.   10 N.Y.3d at 613-14.  She did not sue under §191.  The Pachter court stated that the purpose of Labor Law §190(5), (6) and (7), which define manual workers, railroad workers and commission salespersons, "is to eliminate executives from particular requirements in article 6, such as the frequency of wage payments to manual workers, railroad workers, commission salespersons and clerical or other workers (see Labor Law § 191)." Id. at 615.  Observing that "employees serving in an executive, managerial or administrative capacity do not fall under section 191 of the Labor Law," the Pachter court further declared that "executives are employees for purposes of Labor Law article 6, except where expressly excluded." Id. at 616 (emphasis added).

That is exactly the situation here, with the executive and professional plaintiff's claim for unlawful withholding of wages.   Plaintiff does not dispute that he was an executive and a professional.  And it is most telling that plaintiff did not address the vast majority of the legal authority presented by defendants holding that executives and professionals are excluded from unlawful withholding of wages claims under §191.   (DE 82, at 26-34)   The only case that he attempted to address, Lauria v. Heffernan, 607 F. Supp.2d 403, 407-08 (E.D.N.Y. 2009), fully applies here, as shown below.

Thus, plaintiff failed to address the governing legal authority discussed in detail in defendants' brief, such as Eden v. St. Luke's-Roosevelt Hosp. Ctr., Index No. 114936/05 (N.Y.

Sup. Ct. Oct. 19, 2010), aff'd as modified, 947 N.Y.S.2d 457, 458-59 (1st Dept. 2012), Kaplan v. BST Advisory Network, LLC, 2009 WL 5225215, *7 (N.Y. Sup. Ct. 2009), and Stein v. Sapir Realty Management Corp., 2010 WL 2797910, *4 (N.Y. Sup. Ct. 2010). (DE 82, at 28-32) It is worth noting that all of those cases were decided after Pachter. Further, plaintiff ignored other applicable case law holding that executives and professionals are not covered by §191.

For example, in Moras v. Marco Polo Network, Inc., 2012 WL 6700231 (S.D.N.Y. Dec. 20, 2012), the district court determined that the plaintiff Special Vice President, who alleged that the defendant financial services companies had paid him less money than the sum to which he was entitled under his employment agreements, "does not have valid claims under either section 191 or section 193 of the Labor Law...." Id. at *1, 3, 11. As to §191, the court explained: "Moras is not covered by section 191, because that section is inapplicable to executives."[5] Id. (citing N.Y. Labor Law, §191; Pachter, 10 N.Y.3d at 616 ("[E]mployees serving in an executive...capacity do not fall under Section 191 of the Labor Law."); Gottlieb v. Kenneth D. Laub & Co., 82 N.Y.2d 457, 464 (1993); Malinowski v. Wall St. Source, Inc., 2012 WL 279450, *3 (S.D.N.Y. Jan. 31, 2012)).

Likewise, in Malinowski, the plaintiff Chief Information Officer sought unpaid guaranteed bonuses for 2007 and 2008 and unpaid salary for his final three weeks of employment from the defendant company, WSS, which supplied financial news feeds and other information services to customers, and from its Chief Executive Officer.[6] Id. at *1. The plaintiff

---

[5] As to §193, the Moras court explained that "[n]or can Moras sustain a claim under section 193: 'Section 193 has nothing to do with failure to pay wages..., governing instead the specific subject of making deductions from wages.'" Id. (citations omitted).

[6] Like plaintiff here, the Malinowski plaintiff's purported basis for his unpaid wages claim comprised a moving target. The Malinowski court explained: "In his Complaint, Malinowski is indistinct as to which part or parts of Article 6 he relies on. The Complaint alleges only that defendants owe wages to him 'pursuant to Article 6 of the New York State Labor Law,' citing no

had entered into an employment agreement with the company.  Id.  Having settled with the

company after a bench trial, the plaintiff continued to seek payment of unpaid wages from the

CEO. Id.

The Malinowski court rejected the plaintiff's claim that he was entitled to payment of

unpaid wages under §198 "because he is an 'employee' under Article 6":

> The Court does not agree.  Section 198 of Article 6, entitled "Costs, remedies,"
> outlines the remedies due upon a successful showing of a violation of the article.
> But the remedies supplied by § 198 of Article 6 are available only when a
> claimant has established a violation of his rights under a substantive portion of
> Article 6.

Id. at *2 (citing Gottlieb, 82 N.Y.2d at 462; emphasis in original).  The court further explained:

> In some circumstances, a claim for unpaid wages such as Malinowski's would be
> cognizable under § 191 of Article 6, which mandates the frequency with which an
> employer must pay wages to an employee.  Section 191 does not apply here,
> however, because, as the parties agree and as the trial record confirms,
> Malinowski was an executive during his service at WSS, and it is firmly
> established that § 191 is inapplicable to executives.

Id. at *3 (citing N.Y. Lab. Law, §191; Pachter, 10 N.Y.3d at 616; Gottlieb, 82 N.Y.2d at 464;

emphasis added).

Consequently, Moras and Malinowski, which are both recent (2012), post-Pachter cases

from the Southern District of New York, further support summary judgment dismissing

plaintiff's unlawful withholding of wages claim under the New York Labor Law.

**B.     The only other case on which plaintiff relies, Miteva, likewise provides that
executives and professionals such as plaintiff are excluded from §191**

As with Pachter, Miteva v. Third Point Management Co., LLC, 323 F. Supp.2d 573

(S.D.N.Y. 2004), abrogation on other grounds recognized by, Friedman v. Coldwater Creek, Inc.,

551 F. Supp.2d 164, 170-171 (S.D.N.Y. 2008), does not favor plaintiff's opposition.  In fact, it

---

section of that Article (Dkt.1).  In his January 19, 2012 letter brief, Malinowski argues that his
'recourse' is under § 198(3) of Article 6." Id. at *2.

supports summary judgment dismissing plaintiff's unpaid wages claim under the New York

Labor Law.

Miteva entailed the plaintiff's claims under §193 for allegedly illegal deductions from her

salary by her former employer. Id. at 577. (DE 85, at 11)  The court made clear that executives

and professionals are not entitled to recover under §191(1):

> [R]ecovery under § 191(1) is limited to those individuals who meet the definition
> of a "manual worker," "railroad worker," "commission salesman," or "clerical or
> other worker," as defined in § 190(4)-(7).    Lab. Law. §§ 191(1); 190(4)-
> (7))....Because regulations are specified only for the four narrow sub-categories
> of employees, and not for "employees" generally, the only employees who could
> even potentially accept wages "as provided in this section" are those who qualify
> under the four narrow sub-categories listed in § 191(1).

Id. at 584 (emphasis in original).

The court further explained that executives and professionals are not entitled to recover

under §191(3):

> Because only the four specific sub-categories of employees listed in § 191(1) have
> pay days "established in accordance with the provisions of this section," only the
> four specific sub-categories of employees can recover under § 191(3). Id. Sub-
> sections 191(1), (2), and (3) constitute the entirety of § 191.
>
> An analysis of each sub-section of § 191 reveals that only the four enumerated
> sub-categories of "employee" as defined in § 190(4)-(7) are able to recover under
> § 191.

Id. (emphasis in original).

Plaintiff disregards the Miteva court's discussion of §191's limitations on the types of

employees covered by that Labor Law section.  It is evident from Miteva, however, as well as

from the more recent governing case law, such as Lauria, Eden, Kaplan, Stein, Moras and

Malinowski, that executives and professionals such as plaintiff are excluded from §191.

### C.   <u>Lauria</u> fully applies here

Plaintiff's effort to distinguish <u>Lauria</u> is thoroughly unavailing.  (DE 85, at 10-11)  As the <u>Lauria</u> decision makes clear, the plaintiffs sued to recover "unpaid wages" when the defendants ceased paying them to the plaintiffs.  607 F. Supp.2d at 405-06.  Indeed, the <u>Lauria</u> complaint indicates that plaintiffs Peter and Paul Impagliazzo – the executives whose §191 claims the district court dismissed on summary judgment because as executives they were excluded from §191 – sought their unpaid commissions and wages under §191, as well as the remedies of liquidated damages and attorneys' fees under §198.  (See <u>Lauria</u> Complaint, ¶130-140, 148-158, Wherefore clause, ¶6, 7; attached to Chociey Reply Decl. as Exh. E)  In their complaint, the Impagliazzos described their §191 claims as ones for "unpaid commissions," arising because the defendant had "stopped paying [Peter and Paul] Impagliazzo earned commissions on loans that [the defendant] closed through mortgage brokers solicited by him," and because of the defendant's "conduct in not paying earned wages...."  (<u>Lauria</u> Complaint, ¶133, 136, 139, 151, 154, 157)  The Impagliazzos brought their claims for unpaid commissions and wages under §191, but the <u>Lauria</u> court properly decided that such claims could not survive summary judgment because §191 does not apply to executives.  607 F. Supp.2d at 407-08.

Plaintiff further suggests that <u>Lauria</u> somehow does not apply because "that case did not involve unpaid wages under Labor Law § 198 like Rosenblatt's."  (DE 85, at 10)  Plaintiff is wrong, again, for at least two reasons.

First, as demonstrated below, §198 is a remedial provision of the Labor Law, not a substantive one – which plaintiff has admitted.  Thus, §198 does not provide a substantive basis for a "claim for unpaid wages."  It is blatantly incorrect as a matter of law for plaintiff to suggest that he is entitled to maintain a claim for "unpaid wages under Labor Law §198."  (DE 85, at 10)

Second, as noted above, the plaintiffs Peter and Paul Impagliazzo sued to recover unpaid commissions and wages under the substantive provision of §191 and to recover liquidated damages and attorneys' fees under the remedial provision of §198.  (See Lauria Complaint, ¶¶130-140, 148-158, Wherefore clause, ¶6, 7)   And the district court properly granted the defendants' summary judgment motion as to their §191 claims.  607 F. Supp.2d at 408.   The same result as to plaintiff's unpaid wages claim is appropriate here.  Further, as explained below, that plaintiff has now confined his Labor Law claim to §198 constitutes another basis on which the Court should grant summary judgment as to such claim.  (DE 85, at 11)

Finally, plaintiff did not bother to address any of the applicable case law cited by defendants demonstrating that claims for unlawful withholding of wages constitute §191, not §193, claims.  (DE 82, at 32-33)  It is apparent why plaintiff failed to do so: "Section 193 has nothing to do with failure to pay wages or severance benefits, governing instead the specific subject of making deductions from wages."  Monagle v. Scholastic, Inc., 2007 WL 766282, *2 (S.D.N.Y. Mar. 9, 2007) (citing Kletter v. Fleming, 820 N.Y.S.2d 348, 350 (3rd Dep't 2006); Miteva, 323 F. Supp.2d at 584).

Monagle is illuminating here.  In that case, the plaintiff Senior Vice President sued for breach of his separation agreement and for violation of "New York Labor Law Section 190 et seq." when the defendant paid him only a portion of the severance payments provided under the agreement.[7]  Id. at *1.  The district court granted the defendant's Fed. R. Civ. P. 12(b)(6) motion to dismiss the claim that the failure to pay the agreed severance amount violated the Labor Law.

---

[7] Like plaintiff and the Malinowski plaintiff, Monagle's Labor Law claim comprised a moving target: "Monagle's complaint refers to no particular provision of the Labor Law, instead generally citing the provisions of article 6 of that statute as 'Section 190 et seq.'  (Compl. ¶ 34.) His response to Scholastic's motion is little more precise, citing 'inter alia, sections 191(3), 193 and 198.'  The Court cannot guess at which sections are among the 'alia' Monagle relies on, but the specifically cited sections do him no good."  Id. at *2.

Id.  In so doing, the court addressed Miteva, explaining that even assuming "that there is no basis for excluding executives and professionals from § 190(2)'s broad definition of 'employee,'" "this hardly ends the analysis." Id. at *1-2.  The court declared:

> That Monagle was a statutory employee does not determine whether he has a claim under any particular provision of the Labor Law, since many of the provisions defining particular rights do not apply to all "employees" as defined in the statute, but are limited by their own terms to particular categories of employee.

Id. at *2 (emphasis in original).  The Monagle court then explained:

> Section 191(3) by its very terms applies only to the four specific categories of employees listed in § 191.  Kletter v. Fleming, 820 N.Y.S.2d 348, 350 (3d Dep't 2006); Miteva, 323 F.Supp.2d at 584.  Section 193 has nothing to do with failure to pay wages or severance benefits, governing instead the specific subject of making deductions from wages.  Kletter, 820 N.Y.S.2d at 350 (general allegation of failure to pay money due does not state a claim under § 193 absent allegation of "any specific deduction" from wages).  And § 198 provides no substantive cause of action at all; it is a remedial provision authorizing recovery of costs and attorneys' fees to plaintiffs who recover on claims brought under other provisions of the Labor Law.

Id.

Likewise, here, it is undisputed that plaintiff was not one of the four specific categories of employees in §191.  Further, §193 has nothing to do with failure to pay wages.  Finally, §198 provides no substantive cause of action at all to plaintiff.  Summary judgment as to his unpaid wages claim is mandated as a matter of law.

### D.  Plaintiff's Labor Law claim is an impermissible moving target

Plaintiff has yet again sought to change his unlawful withholding of wages claim.  (DE 85, at 11)  This is at least the third time that he has sought to do so.  First, he ostensibly referred to §193 in his complaint.  (DE 1, at ¶83)  Then, he referred to §191 in his proposed jury instructions.  (DE 54-1, at 60, n. 24)  Now, he states in no uncertain terms that "Rosenblatt's claim is under Section 198 for the unlawful withholding of wages." (DE 85, at 11)

In any event, plaintiff's "claim…under Section 198 for the unlawful withholding of wages" cannot survive as a matter of law.  Section 198 is remedial only, by its express terms – it explicitly applies only to "an action to recover upon a liability imposed by this article…."  N.Y. Labor Law, §198(3).  As the court in plaintiff's own cited case, <u>Pachter</u>, explained, "the text, history and purpose of that statute [§198(1-a)] indicated that attorney's fees are available only to plaintiffs who prove a violation of article 6."  10 N.Y.3d at 616 (citing <u>Gottlieb</u>, 82 N.Y.2d at 464).  Indeed, the <u>Malinowski</u> court declared that "by its terms, § 198(3) applies only to 'an action to recover upon a liability imposed by this article'; it therefore does not supply a freestanding right to relief."  2012 WL 279450, *2 (citing N.Y. Lab. Law §198(3)).  Accordingly, "[t]he remedies of section 198 may not be invoked when the claim is in substance a contract claim to enforce the payment of obligations other than statutory wages…."  <u>Fin. Techs. Int'l, Inc. v. Smith</u>, 247 F. Supp.2d 397, 413 (S.D.N.Y.2002) (citing <u>Gottlieb</u>, 82 N.Y.2d at 462-63).  <u>See Stein</u>, 2010 WL 2797910, at *4; <u>Gottlieb</u>, 82 N.Y.2d 457 at 464.  (DE 82, at 34)

Plaintiff has conceded that §198 is only remedial.  (DE 63, at 5)  Plaintiff has admitted that "section 198 is only meant to provide remedies for violations of section 190 et seq., and if no violation occurred there could be no recovery."  (<u>Id.</u>)  And plaintiff concedes that "an executive may not bring a claim under Section 191."  (DE 85, at 11)

Consequently, absent recovery on a substantive provision of the Labor Law, plaintiff is not entitled to maintain a "claim" under §198.  Given that executives and professionals are excluded from unlawful withholding of wages claims pursuant to §191, summary judgment is appropriate as to the complaint's Fourth Claim.

## V.   PLAINTIFF CANNOT WITHSTAND SUMMARY JUDGMENT ON HIS UNLAWFUL RETALIATION CLAIM (SIXTH CLAIM)

Plaintiff did not address the undisputed facts of record establishing the lack of a nexus between his "complaint" about non-payment and the termination of his employment. (DE 85, at 12-13)  Mr. Doha made the business decision to end the failed Melothe project in July 2011; the project had failed to generate any revenue, let alone any profit. (DE 79, ¶¶4, 6-8; Doha dep. tr., 141:11-20, attached to Chociey Reply Decl. as Exh. A)  He terminated the employment of all remaining employees, which included plaintiff, Mr. Ross, Mr. Lipsky and Mr. Merriam, in furtherance of such decision.  Plaintiff happened to be one of the terminated employees.  Mr. Doha did not replace plaintiff, or any other terminated employee, with anyone. (DE 79, ¶¶4, 6-8)

Further, plaintiff states in his opposition declaration that he first complained to Mr. Doha in November 2011 about non-payment, and then repeated his request for payment "throughout the period during January-July 2011." (DE 88, at ¶42-45)  It is undisputed that none of his "repeated" prior alleged complaints about non-payment resulted in his employment's termination.  Indeed, there is no evidence of record of a nexus between Mr. Doha's decision to end the project and terminate the employment of all remaining employees – of whom plaintiff was one – in July 2011, and any alleged "complaint" to Mr. Doha by plaintiff about unpaid wages. (DE 1, at ¶93)

In addition, plaintiff's claim under New York Labor Law §215(2) is defective because he failed to notify the State Attorney General notice of his claim. Crosland v. City of New York, 140 F. Supp. 2d 300, 317 (S.D.N.Y. 2001), aff'd sub nom., Crosland v. Safir, 54 F. App'x 504 (2d Cir. 2002) ("plaintiff has failed to give the New York State Attorney General notice of the state-law claim, as required by N.Y. Lab. Law § 215(2)").  Plaintiff's reliance on Quintanilla v. Suffolk Paving Corp., 2011 WL 1323033 (E.D.N.Y. Feb. 10, 2011), report and recommendation

adopted, 2011 WL 1253248 (E.D.N.Y. Mar. 28, 2011), is misplaced.  (DE 85, at 12)  Quintanilla
dealt with the plaintiff's failure to give the statutorily mandated notice before the plaintiff
attempted to amend the pleading to assert the providing of such notice.   2011 WL 1323033, *1.
The court stated that "such notice is not, under the circumstances herein, a condition precedent
that would bar this amendment [to the complaint]."  Id. at *7.  Here, the circumstances are far
different, as the parties have finished discovery and are in the midst of summary judgment
motion practice.  Yet, plaintiff has not provided the notice to the Attorney General required by
New York Labor Law §215(2), nor moved pursuant to Fed. R. Civ. P. 15 to assert the providing
of any such notice.

**VI.   PLAINTIFF'S BREACH OF FIDUCIARY DUTY AND ACCOUNTING CLAIMS
CANNOT SURVIVE SUMMARY JUDGMENT BECAUSE PLAINTIFF DID NOT
ENTER INTO ANY PARTNERSHIP WITH MR. DOHA AND MR. FRIEDRICH
(NINTH AND ELEVENTH CLAIMS)**

Plaintiff's opposition to summary judgment as to his breach of fiduciary duty and
accounting claims is comprised of a few sentences about partnerships, joint ventures and
minority shareholders.  (DE 85, at 13-14)  He made no attempt to present the Court with any
evidence of record meeting the legal requisites for establishing a partnership or a joint venture, or
demonstrating any intent by plaintiff, Mr. Doha and Mr. Friedrich to enter into a partnership or
joint venture.  Nor has plaintiff explained by what legal basis he is entitled, in opposition to a
summary judgment motion, to assert new, unpled "claims" about entry into a joint venture and
minority shareholder status.

**A.    As a matter of law, no partnership existed among plaintiff, Mr. Doha and
Mr. Friedrich**

Plaintiff does not dispute that he, Mr. Doha and Mr. Friedrich did not enter into a limited
partnership ("LP") or a limited liability partnership ("LLP") in accordance with the legal
requirements under the New York Partnership Law, §121-201(a), 121-1500(a)(I), that they did

not register and pay for an LP or LLP certificate with the State of New York and that the State of New York has not issued an LP or LLP certificate to them.  (DE 85, at 13; DE 82, at 38-40)  Thus, they did not form an LP or LLP as a matter of law.

Nor does plaintiff dispute that he, Mr. Doha and Mr. Friedrich did not enter into any agreement to share in their alleged partnership's profits and losses as required by New York law for a general partnership.  (DE 82, at 40-42)  Plaintiff does not dispute that the employment and consulting agreements, which he prepared – or any other evidence of record, for that matter – did not establish the intent by Mr. Doha, Mr. Friedrich and him to enter into a general partnership.  (DE 82, at 42-45; DE 88-15, at 2)  And he does not dispute that the language of the two agreements demonstrates that they are not partnership agreements, that the agreements failed to address any of a partnership agreement's typical aspects or that the agreement's express limitations on his authority undermine any assertion by plaintiff that he, Mr. Doha and Mr. Friedrich intended to enter into a general partnership.  (Id.)

Accordingly, summary judgment is appropriate as to the complaint's Ninth Claim.  As a matter of law, there is no liability for Mr. Doha or Mr. Friedrich concerning plaintiff's breach of fiduciary duty claim or, for that matter, any claim based on an alleged partnership involving plaintiff, Mr. Doha and Mr. Friedrich.

**B.      As a matter of law, no joint venture existed**

Similarly, plaintiff's suggested joint venture "claim" cannot survive summary judgment. First, plaintiff did not allege in the complaint that any parties entered into a joint venture, and did not move pursuant to Fed. R. Civ. P. 15 to amend his pleadings to so assert. (DE 1-1, at 114-18, Ninth Claim)  There is no claim about entry into a joint venture in this case.  See Oneida Indian Nation of New York v. County of Oneida, 617 F.3d 114, 134 (2nd Cir. 2010). (DE 82, at 36-37) Plaintiff should not be permitted to raise new claims in opposition to a summary judgment

motion. See Beckman v. U.S. Postal Serv., 79 F. Supp.2d 394, 407 (S.D.N.Y. 2000) ("Because a

failure to assert a claim until the last minute will inevitably prejudice the defendant, courts in this

District have consistently ruled that 'it is inappropriate to raise new claims for the first time in

submissions in opposition to summary judgment.'") (quotation omitted); Bonnie & Co. Fashions,

Inc. v. Bankers Trust Co., 170 F.R.D. 111, 119 (S.D.N.Y. 1997) ("In addition, although

plaintiffs' memorandum in opposition to summary judgment contains an eight-page section

arguing in support of their breach of good faith and fair dealing claim, it is inappropriate to raise

new claims for the first time in submissions in opposition to summary judgment.").

Second, even if there were a "joint venture" claim in this lawsuit, which there is not, the

law in New York requires that the parties to a joint venture undertake to share in the profits of

the business and submit to the burden of making good the losses:

> An indispensable element of a joint venture "is a mutual promise or undertaking
> of the parties to share in the profits of the business and submit to the burden of
> making good the losses" (see, Matter of Steinbeck v. Gerosa, 4 N.Y.2d 302, 317,
> 175 N.Y.S.2d 1, 151 N.E.2d 170 [emphasis in original]; see also, Williams v.
> Forbes, 175 A.D.2d 125, 571 N.Y.S.2d 818; Tanzi v. Vergopia, 128 A.D.2d 769,
> 771, 513 N.Y.S.2d 253). Neither the plaintiff's complaint nor the affidavits the
> plaintiff submitted in opposition to the appellants' motion for summary judgment
> and in support of his own motion for an injunction allege any agreement to share
> the burden of losses. The failure to do so is fatal to his assertion of a joint venture
> (see, De Vito v. Pokoik, 150 A.D.2d 331, 540 N.Y.S.2d 858). Moreover, in the
> absence of other indicia that would establish the existence of a joint venture (see
> generally, Mendelson v. Feinman, 143 A.D.2d 76, 77, 531 N.Y.S.2d 326), an
> assertion that there was an agreement to distribute the proceeds of an enterprise
> on a percentage basis will not suffice (see, De Vito v. Pokoik, supra).

Davella v. Nielsen, 208 A.D.2d 494, 494 (2nd Dept. 1994) (emphasis added). See Kidz Cloz, Inc.

v. Officially For Kids, Inc., 320 F. Supp.2d 164, 171 (S.D.N.Y. 2004) ("The requirement that the

parties have agreed to share in the profits and losses is 'an indispensable essential of a contract of

partnership or joint venture.'"; quotation omitted).

Further, as the district court has explained:

For a joint venture to exist, "[i]t is not enough that the parties have agreed to act in concert to achieve some stated economic objective." <u>Abbas Corp. (PVT) Ltd. v. Michael Aziz Oriental Rugs, Inc.</u>, 820 F. Supp.2d 549, 554 (S.D.N.Y. 2011) (internal quotation marks omitted). Rather, to demonstrate the formation of a joint venture, a party must establish that:

> (1) two or more persons [ ] enter[ed] into a specific agreement to carry on an enterprise; (2) their agreement must evidence their intent to be joint venturers; (3) each must make a contribution of property, financing, skill, knowledge[,] or effort; (4) each must have some degree of joint control over the venture; and (5) there must be a provision for the sharing of both profits and losses.

<u>Learning Annex Holdings, LLC v. Whitney Education Group, Inc.</u>, 765 F. Supp.2d 403, 411–12 (S.D.N.Y.2011) (citing <u>Dinaco, Inc. v. Time Warner, Inc.</u>, 346 F.3d 64, 67–68 (2d Cir. 2003)). "[T]he absence of any one of these elements is fatal to the establishment of a joint venture." <u>Id.</u> (footnote omitted) (internal quotation marks omitted).

<u>Northern Shipping Funds I, LLC v. Icon Capital Corp.</u>, 921 F. Supp.2d 94, 102 (S.D.N.Y. 2013).

As demonstrated in defendants' moving papers, it is undisputed that there was no agreement among plaintiff, Mr. Doha and Mr. Friedrich to undertake to share in the profits of the subject business and submit to the burden of making good the losses. (DE 82, 42-43) The failure to show an agreement to share the burden of losses is fatal to any assertion of a joint venture. <u>See</u> <u>De Vito v. Pokoik</u>, 150 A.D.2d 331, 331 (2nd Dept. 1989) ("An essential element of a joint venture is a provision for the sharing of the profits and the losses of the enterprise."); <u>Kidz Cloz</u>, 320 F. Supp.2d at 171; <u>Davella</u>, 208 A.D.2d at 494.

Nothing in the employment or consulting agreements indicated any intent by Mr. Doha or, for that matter, Mr. Friedrich, who was not a party to or even mentioned in the agreements, to form a joint venture with plaintiff, or vice versa. For instance, the term "joint venture" is not even used in either agreement. (DE 1-1, 1-3) And, as noted, above plaintiff has stated that he prepared the employment and consulting agreements. (DE 88-15, at 2; "attached again are the drafts I've prepared of my employment and consulting agreements") Plaintiff, an attorney,

certainly did not express in the agreements any purported intent by Mr. Doha, Mr. Friedrich (who was not a party to the agreements) and plaintiff to enter into a joint venture (or any partnership, for that matter).

Consequently, even if the Court were to entertain a "joint venture" claim by plaintiff, which it should not, summary judgment is appropriate.  The Court should dismiss any such "claim."

### C.     Plaintiff's unpled minority shareholder "claim" cannot withstand summary judgment

Plaintiff did not assert any claims or facts concerning his now-purported "minority shareholder" status in his complaint's breach of fiduciary claim under New York law, the complaint's Ninth Claim.  (DE 1-1, at ¶114-18)  Instead, plaintiff asserted claims and facts arising under the New York Partnership Law §42, alleging that plaintiff and defendants Doha and Friedrich had formed a partnership and that such defendants had breached their duties to him "by refusing, following a demand, to render true and full information of all things affecting the partnership in violation of New York Partnership Law § 42." (Id. at ¶117)

Yet again, plaintiff's claims in this lawsuit should not be a moving target.  He should not be permitted to assert new legal claims in opposition to a summary judgment motion, particularly when defendants have quite reasonably addressed their discovery, deposition questioning and entire approach to defending this lawsuit based on plaintiff's pled assertions that a breach of fiduciary duty arose from the alleged "partnership" among plaintiff, Mr. Doha and Mr. Friedrich. See Beckman, 79 F. Supp.2d at 407; Bonnie & Co. Fashions, 170 F.R.D. at 119.  Plaintiff should not be permitted now, at this late stage of the lawsuit, to change his pleadings, allegations and legal claims.

Indeed, plaintiff has not moved to amend his pleadings to assert this new purported minority shareholder "claim" pursuant to <u>Fed. R. Civ. P.</u> 15. Even if he had done so, any such application should be denied as prejudicially untimely, as he has provided no justification for why he only now seeks to introduce this new "claim" in opposition to a summary judgment motion. <u>See</u> <u>Cresswell v. Sullivan & Cromwell</u>, 922 F.2d 60, 72 (2nd Cir. 1990) ("The court plainly has discretion, however, to deny leave to amend where the motion is made after an inordinate delay, no satisfactory explanation is offered for the delay, and the amendment would prejudice the defendant.").

Plaintiff did not allege minority shareholder status in the complaint, and he did not mention such status in his August 23, 2013 proposed jury instructions concerning his breach of fiduciary duty claim under New York law. (DE 1-1, at ¶¶114-18; DE 54-1, at 85-86) He did not cite in that proposed jury instruction any of the cases that he now cites in his opposition brief. (DE 54-1, at 86)

Moreover, in his opposition brief, plaintiff sets forth no facts of record demonstrating that Mr. Doha or Mr. Friedrich, who are the defendants named in the Ninth Claim, breached any alleged fiduciary duty to plaintiff. (DE 85, at 13-14; DE 1-1, at ¶114-18) That is completely insufficient to withstand summary judgment. The burden of proof has shifted to plaintiff, who must go beyond the pleadings and submit through affidavit or by depositions, answers to interrogatories or admissions on file "specific facts showing that there is a genuine issue for trial." <u>Fed. R. Civ. P.</u> 56(e); <u>Celotex</u>, 477 U.S. at 324. He has not even come close to doing so.

Instead, plaintiff bases his entire opposition to summary judgment as to his breach of fiduciary claim on the statement in his brief that "[u]nder Rosenblatt's agreement, he was an equity owner of the Melothe Business and was entitled to annual profit distributions." (DE 85, at

13) But it is undisputed that the project did not generate any revenue, let alone any profit. (DE 79, ¶4; Doha dep. tr., 141:11-20) Consequently, there was no "breach of fiduciary duty" by anyone in failing to pay non-existent profits to plaintiff.

Further, the cases now cited by plaintiff bear no factual resemblance to this lawsuit. Alpert v. 28 Williams St. Corp., 63 N.Y.2d 557, 567 (1984), involved a two-step merger of different entities that "froze-out" minority shareholders. Even there, the court determined that such a merger did not constitute a breach of fiduciary duty "so long as the transaction viewed as a whole is fair to the minority shareholders and is justified by an independent corporate business purpose." Id. Even attempting to analogize Alpert's facts to those here does not support plaintiff's new theory that there was a breach of fiduciary duty to a minority shareholder as there was an independent business purpose to Mr. Doha's decision to terminate plaintiff's employment, and the employment of all other existing employees – the project's failure.

Littman v. Magee, 54 A.D.3d 14 (1st Dept. 2008), abrogated by, Centro Empresarial Cempresa S.A. v. Am. Movil, S.A.B. de C.V., 17 N.Y.3d 269 (2011), also bears no resemblance to the facts at issue here. There, the plaintiff alleged that the defendants had wrongfully prevailed upon him to sell his minority interest in the defendants' closely held corporation, and to execute in that context a broad release, by making assertions that he understood to mean that no material financial information was available beyond the limited materials already supplied to him. Id. at 15. Littman was subsequently abrogated by the Court of Appeals on the issue of whether a sophisticated principal is able to release its fiduciary from claims. Centro Empresarial Cempresa S.A. v. Am. Movil, S.A.B. de C.V., 17 N.Y.3d 269, 278 (2011). Further, and importantly, Littman's facts are completely unrelated to this lawsuit, and plaintiff has made no

attempt to explain why that case is at all relevant here or supports a new purported "minority shareholder" claim.

Finally, a brief word about plaintiff's accounting claim, which he fleetingly mentioned in heading "E" on page 13 of his opposition brief; he presented no substantive legal argument in opposition to defendants' summary judgment motion.  (DE 85, at 13)  Such claim derives from his alleged status as a "partner" in a "partnership" under New York Partnership Law §44.  (DE 1-1, at ¶123-28)  Plaintiff has not met his burden of demonstrating that he, Mr. Doha and Mr. Friedrich entered into a partnership, and thus his accounting claim fails as a matter of law.

## VII.   PLAINTIFF'S UNJUST ENRICHMENT CLAIM MUST FAIL (FOURTEENTH CLAIM)

In trying to save his unjust enrichment claim, plaintiff attempts a slight of hand that mischaracterizes defendants' argument in their moving brief.  (DE 85, at 14; DE 82, at 47)  Defendants submitted that New York law does not allow unjust enrichment claims that arise from the same subject matter that is governed by a contract, citing Bettan v. Geico Gen. Ins. Co., 296 A.D.2d 469, 470, 745 N.Y.S.2d 545, 546 (2nd Dept. 2002).  (DE 82, at 47)  Plaintiff now misleadingly suggests that there is a "dispute" about the existence of a contract.  (DE 85, at 14)  The parties have not disputed the employment and consulting agreements' existence, however.

Plaintiff tries to convert defendants' basis for summary judgment as to his fiduciary duty and accounting claims, including the undisputed lack of any agreement to form a partnership among plaintiff, Mr. Doha and Mr. Friedrich, into "a bona fide dispute as to the existence of a contract."  (DE 85, at 14)  Plaintiff's misleading suggestion misses the point entirely – his unjust enrichment claim duplicates his existing breach of contract claims for breach of the employment and consulting agreements.  Plaintiff does not allege any independent factual bases, events, etc. for his unjust enrichment claim, and he has not presented any evidence of any such independent

factual bases, events, etc. (DE 1-1, at ¶140-45) His reference to "the circumstances described herein" as the basis for his unjust enrichment claim underlines the claim's duplicative nature. (Id. at ¶143) Plaintiff never alleged breach of contract relating to a purported partnership agreement. (Id. at ¶96-118) He did not allege that any partnership agreement existed at all, only that "Rosenblatt, Doha, and Friedrich associated with each other to carry-on as co-owners of the Mient Business for profit." (Id. at ¶115)

In addition, plaintiff's unjust enrichment claim must fail because there is no genuine issue of material fact as to whether any defendants unjustly enriched themselves from the failed project. It is undisputed that the project failed to generate any revenue (or profit). (DE 79, at ¶4; Doha dep. tr., 141:11-20) Thus, in Moras, the court rejected the plaintiff's unjust enrichment claim when he did not establish that "defendants enriched themselves at his expense. To the contrary, the evidence shows that Moras's salary went unpaid because the companies were experiencing severe financial trouble." 2012 WL 6700231, *12. The Moras court also explained that "'[u]njust enrichment is an equitable claim that is unavailable where an adequate remedy at law exists.'" Id. (citations omitted). Likewise, here, with a project that failed to generate any revenue, let alone profit, plaintiff has not adduced any evidence of any unjust enrichment as a matter of law. And his breach of contract claims comprise an adequate remedy at law, in the event that he is able to prevail on such claims at trial. Summary judgment dismissing plaintiff's duplicative, unsupported unjust enrichment claim is appropriate.

## CONCLUSION

For the foregoing reasons, defendants respectfully request that the Court grant their partial summary judgment motion, and grant defendants such other and further relief as the Court deems equitable and appropriate.

Respectfully submitted,

RIKER, DANZIG, SCHERER, HYLAND &
 PERRETTI LLP
Attorneys for Defendants


By: s/Edwin F. Chociey, Jr._____
            Edwin F. Chociey, Jr.

Dated: October 15, 2013

4417901v1